UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUOC CHI HOAC,<br><br>    Petitioner,<br><br>v.<br><br>MOISES BECERRA, et al.,<br><br>    Respondents. | No. 2:25-cv-01740-DC-JDP<br><br>ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION<br><br>(Doc. No. 23) |

This matter is before the court on Petitioner's motion for temporary restraining order and motion for preliminary injunction. (Doc. No. 23). Pursuant to Local Rule 230(g), the court found it appropriate to take the matter under submission to be decided on the papers. For the reasons explained below, the court will grant Petitioner's motions for temporary restraining order and preliminary injunction.[1]

**BACKGROUND**

**A.    Factual Background**

The court previously summarized the events that preceded the court's prior order denying

---

[1] The court will treat Petitioner's motion for temporary restraining order and motion for preliminary injunction as a singular motion for preliminary injunction. The Respondents had notice and an opportunity to respond. Moreover, the parties have briefed the issues extensively and the standard is the same. *Doe v. Becerra*, No. 25-cv-00647-DJC-DMC, 2025 WL 691664, at *3 (E.D. Cal. Mar. 3, 2025).

1

1  Petitioner's initial motion for temporary restraining order. (*See* Doc. No. 21 at 1–3.) In their
2  opposition, Respondents provide a declaration from Department of Homeland Security ("DHS")
3  Deportation Officer Charles Gallenkamp. (Doc. No. 26-1.) Mr. Gallenkamp affirms in his
4  declaration that while the "travel document request for Petitioner is in the process of being
5  completed," "[a]s of July 11, 2025, there is no travel document to Petitioner's country of origin,
6  Vietnam." (*Id.* at ¶¶ 6, 7.)

**B.     Procedural Background**

On June 20, 2025, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (*Id.* at 1.) Also on June 20, 2025, Petitioner filed a motion for temporary restraining order. (Doc. No. 2.) Respondents filed their opposition to Petitioner's motion for temporary restraining order on June 27, 2025. (Doc. No. 18.) Petitioner filed a reply thereto on June 28, 2025. (Doc. No. 19).

On June 30, 2025, the court held a hearing on Petitioner's motion for temporary restraining order. (Doc. No. 20.) In the hearing, Petitioner was provided an opportunity to clarify his request that Respondents release him from custody and refrain from re-detaining him unless and until he is afforded a hearing before a neutral adjudicator. Specifically, the court asked Petitioner what "neutral adjudicator" would be responsible for conducting the hearing. In response, Petitioner explained that their request was to enjoin "Respondents from re-detaining him unless this court first holds a hearing and makes factual findings as to whether his re-detainment is warranted." (*See* Doc. No. 21 at 4.)

Later that day, the court issued an order denying Petitioner's motion for temporary restraining order. (Doc. No. 21.) In its order, the court found Petitioner's proposed injunctive relief would require the court to make the initial finding of a changed circumstance before Petitioner could be re-detained. (*Id.* at 6.) The court found this form of relief was, in effect, an improper intrusion on Executive Branch's authority. (*Id.* at 6–7.) The court then concluded it lacked the authority to grant the relief requested, and denied Petitioner's motion on that basis alone. (*Id.* at 7.)

Petitioner filed the operative first amended petition for writ of habeas corpus under

28 U.S.C. § 2241 alleging that he is unlawfully detained by Immigration and Customs Enforcement ("ICE"), a component of the Department of Homeland Security ("DHS"). (Doc. No. 22 at ¶ 15.) Petitioner asserts five causes of action: (1) unlawful re-detention in violation of 8 C.F.R. §§ 241.13(i)(2), 1231(a)(6); (2) violation of procedures for revocation of release in violation of 8 C.F.R. § 241.13(i)(3); (3) violation of the Immigration and Nationality Act of 1952 ("INA"); (4) unconstitutionally indefinite detention in violation of his procedural due process rights under the Fifth Amendment to the United States Constitution; and (5) unconstitutionally inadequate procedures regarding third country removal in violation of his procedural due process rights under the Fifth Amendment to the United States Constitution. (*Id.* at 24–28.)

Petitioner then filed a second motion for temporary restraining order and motion for preliminary injunction on July 9, 2025. (Doc. No. 23.) Respondents filed their opposition on July 14, 2025.[2] (Doc. No. 26.) Petitioner filed his reply thereto on July 15, 2025. (Doc. No. 27.)

**LEGAL STANDARD**

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.*, 555 U.S. at 22.

A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits

---

[2] In their opposition, Respondents move to strike and dismiss "all unlawfully named officials under § 2241." (Doc. No. 26, at 1 n.1) The proper respondent rule states that the proper respondent in a "core" habeas petition challenging present physical confinement is the immediate custodian. *Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024). Petitioner has properly named his immediate custodian, the Facility Administrator of the Golden State Annex. However, if Respondents seek to dismiss the other Respondents from this action, they must do so in a properly noticed motion.

submitted in support of and in opposition to the [motion for preliminary injunction]." *Cal. Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745 F.Supp.3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F.Supp.3d 1177, 1185 (C.D. Cal. 2015).

## ANALYSIS

### A.     Duplicative Motions

In their opposition, Respondents argue Petitioner "unlawfully attempts to relitigate the denial of their first TRO motion claims." (Doc. No. 26 at 1.) The court finds Respondents' argument unpersuasive. As addressed above, the court denied Petitioner's initial motion because it did not have the authority to grant the relief he requested. Specifically, the court found that Petitioner's request he be released and this court be required to hold a hearing prior to any re-detention was improper. (Doc. No. 21 at 5.) Subsequently, Petitioner filed an amended petition and renewed motions for injunctive relief asking for relief that is substantively different from what the court considered in its initial order. (Doc. Nos. 22, 23.) Accordingly, the court finds Petitioner's motions are not duplicative.

### B.     *Winter* Factors

#### 1.     Likelihood of Success on the Merits

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any order of removal. 8 U.S.C. § 1231(a)(1). However, once that time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," the noncitizen must be released. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release. 8 U.S.C. § 1231(a)(3), (6). The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release for purposes of removal. Specifically, a noncitizen's release may be revoked "if, on account of changed

4

circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon such a determination:

> [T]he alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

*Id*. § 241.13(i)(3). The plain language of § 241.13(i)(2), does not allow a court, in the first instance, to make an individualized finding that a changed circumstances has occurred. *Van Nguyen v. Hyde*, No. 25-cv-11470-MJJ, 2025 WL 1725791, at *3 (D. Mass. Jun. 20, 2025) (quoting *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023)). Instead, to the extent ICE claims that it made such a determination, the court should review that claim in light of the factors set out in 8 C.F.R. § 241.13(f), "instructing ICE on how it should make such a determination." *Id*. The § 241.13(f) factors include but are not limited to:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. *Id*.

*Id.* Respondents do not dispute that this regulation applies to this case, nor do Respondents argue that compliance with this regulation is not required.

Petitioner has shown he is likely to succeed on his claim that Respondents did not properly revoke his release pursuant to § 241.13 for the following reasons. First, in his amended petition, Petitioner alleges Respondents have not timely provided him with an initial interview or an opportunity to respond to the purported reasons for revocation. (Doc. No. 22 at ¶ 85.) Despite having multiple opportunities to address this issue, (Doc. Nos. 18, 26), Respondents have not asserted Petitioner was provided an informal interview. While at the June 30, 2025 hearing

1  Respondents claimed Petitioner was notified of the reason for his arrest at the time he was taken
2  into ICE custody, Respondents conceded they have no specific information regarding whether an
3  informal interview occurred and proffered no evidence thereof. (*See generally* Doc. Nos. 18, 20,
4  26.) Indeed, Petitioner alleged that the only reason he was given for his arrest was that he had an
5  outstanding arrest warrant, which presumably existed since he was first ordered removed by an
6  Immigration Judge in 2023. (Doc. No. 22 at ¶ 6.)

7  Government agencies are required to follow their own regulations. *United States ex rel*
8  *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Because there is no indication that an
9  informal interview was provided to Petitioner, the court finds Petitioner is likely to succeed on his
10 claim that his re-detainment was unlawful. *See Wing Nuen Liu v. Carter*, No. 25-cv-03036-JWL,
11 2025 WL 1696526, at *2 (D. Kan. Jun. 17, 2025) (finding "that officials did not properly revoke
12 petitioner's release pursuant to [§] 241.13" because "and most obviously . . . petitioner was not
13 granted the required interview upon the revocation of his release"); *Sering Ceesay v. Kurzdorfer*,
14 No. 25-cv-00267-LJV, 2025 WL 1284720, at *21 (W.D. N.Y. May 2, 2025) (finding petitioner
15 was not afforded even minimal due process protections when ICE failed to provide petitioner an
16 informal interview upon his re-detainment); *Cf. Ahmad v. Whitaker*, No. 18-cv-00287-JLR-BAT,
17 2018 WL 6928540, at *5 (W.D. Wash. Dec. 4, 2018) (finding that despite not being provided an
18 informal interview, the court could not find an actionable injury because ICE had already
19 "scheduled Mr. Ahmad's removal").

20 Second, Petitioner has shown he is likely to succeed on his claim that Respondents cannot
21 demonstrate changed circumstances such that there is now a significant likelihood Petitioner will
22 be removed to Vietnam in the reasonably foreseeable future.

23 Respondents argue that due to a change in circumstances, as set forth in their prior
24 opposition, Petitioner is detained for removal in the reasonably foreseeable future. (Doc. No. 26
25 at 5.) Specifically, Respondents assert a change in circumstances exists because there is a pending
26 updated travel document request and a "2020 treaty memorandum of understanding" that
27 authorizes "removal and repatriation of Vietnamese citizens who arrived in the United States
28 before July 1995. . . ." (Doc. Nos. 18 at 5 n. 4; 20 at 5.) Additionally, Respondents assert removal

1    is reasonably foreseeable because removals to Vietnam have occurred recently. (Doc. No. 26 at
2    6.)

3          The fact that Respondents intend to complete a travel document request for Petitioner does
4    not make it significantly likely he will be removed in the foreseeable future. (*Id.* at 5.) Indeed,
5    Respondents represent that Petitioner was unable to be removed in 2023, "due to § 1231(a)(2)
6    concerns with travel documents." (*Id.*); *see* § 241.13(f) (factor to consider includes "nature of the
7    Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably
8    foreseeable results of those efforts"). However, Respondents have not provided any details about
9    why a travel document could not be obtained in the past, nor have they attempted to show why
10   obtaining a travel document is more likely this time around. Respondents' intent to eventually
11   complete a travel document request for Petitioner does not constitute a changed circumstance. *See*
12   *Wing Nuen Liu*, 2025 WL 1696526, at *2.

13         Likewise, Respondents rely on the "2020 treaty of memorandum of understanding" to
14   support their assertion of changed circumstances but have not provided the document for the
15   court's consideration. In *Van Nguyen*, the district court found that a 2020 Memorandum of
16   Understanding, establishing a process of review and issuance of travel documents for Vietnamese
17   citizens ordered removed, alone, was not enough to show that a changed circumstance had
18   occurred. 2025 WL 1725791, at *4. Assuming Respondents are referring to the same
19   memorandum of understanding, that assessment is not enough to show there is a significant
20   likelihood that Petitioner will be removed to Vietnam because the memorandum does not
21   mandate that Vietnam will accept Petitioner. *Id.* "Vietnam has total discretion whether to issue a
22   travel document to any individual." *Id*. Thus, the "memorandum of understanding" alone does not
23   appear to be sufficient to show a significant likelihood Petitioner may be removed in the
24   reasonably foreseeable future. *See* § 241.13(i)(2).

25         Next, Respondents' contention that Petitioner's removal is reasonably foreseeable because
26   removals to Vietnam are in fact occurring is unpersuasive. (Doc. No. 26 at 6.) In support of their
27   contention, Respondents cite to findings and recommendations issued in *Hoang Tuong Nguyen v.*
28   *Field Off. Dir., San Francisco Field Off.*, No. 24-cv-01579-KES-EPG, 2025 WL 1864885 (E.D.

7

1    Cal. Jun. 3, 2025). Therein, the magistrate judge recommended that a pre-1995 Vietnamese

2    immigrant's petition be denied as moot, because he the petitioner was removed from the United

3    States to Vietnam on March 19, 2025. (*Id.*)

4    However, Respondents' reliance on single case does not aid the court's analysis on

5    whether there are changed circumstances. Pre-1995 Vietnamese immigrants may be repatriated to

6    Vietnam on "a case-by-case basis." *Hoi Thanh Duong v. Tate*, No. 24-cv-04119-H, 2025 WL

7    933947, at *4 (S.D. Tex. Mar. 27, 2025) (quoting *Trinh v, Homan*, 446 F. Supp. 3d 1077, 1083

8    (C.D. Cal. 2020)). As noted above, Vietnam has discretion whether to issue a travel document to

9    any individual. The petitioner's removal to Vietnam in *Hoang Tuong Nguyen* merely

10   demonstrates that on one occasion, an individual was repatriated from the United States to

11   Vietnam. *See id.*; *Wing Nuen Liu*, 2025 WL 1696526, at *2 (finding that "a single example of

12   documentation being received in March from the Chinese Embassy for one Chinese alien is

13   hardly persuasive" to demonstrate changed circumstances).

14   Respondents have not provided the court with sufficient information that could aid the

15   court's analysis. The court finds the analysis offered in *Van Nguyen* applicable. In *Van Nguyen*,

16   the court found it was "missing some very pertinent information" including the total number of

17   requests for removal that were made to Vietnam. *Van Nguyen*, 2025 WL 1725791, at *4. The

18   court reasoned it might be able to gauge how likely it is that the petitioner would be removed to

19   Vietnam if the court knew what percentage of the requests Vietnam accepted. *Id*. For instance, the

20   court found "[i]f DHS submitted 350 requests and Vietnam issued travel documents for 328

21   individuals" then removal was significantly likely. *Id*. However, "if DHS submitted 3,500

22   requests and only 328 individuals received travel documents" the court noted "Respondents

23   would not be able to meet their burden." *Id*. Similarly, the court has no evidence regarding the

24   percentage of successful requests to Vietnam to demonstrate changed circumstances.

25   Lastly, Respondents contend Petitioner's removal to Vietnam is foreseeable because he

26   declined to apply for relief from removal and requested a removal order to Vietnam on September

27   6, 2023. (Doc. No. 26 at 5.) Respondents' contention is unavailing. Petitioner's acceptance of a

28   removal order, in itself, does not mean that Vietnam will accept a travel document for him.

1         Petitioner has shown Respondents likely did not comply provide him with the informal

2   interview as required by § 241.13(i)(3). Petitioner has also shown it is likely that there is no

3   change in circumstances such that Petitioner will be removed to Vietnam in the reasonably

4   foreseeable future as required by § 241.13(i)(2). Government agencies are required to follow their

5   own regulations, *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *see

6   Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993) ("[W]hen a regulation is promulgated to

7   protect a fundamental right derived from the Constitution or a federal statute, and [the

8   government] fails to adhere to it, the challenged deportation proceeding is invalid.").

9   Consequently, the court concludes that Petitioner has shown a likelihood of success on the merits

10  of his claims that his re-detainment is unlawful because ICE has not complied with the controlling

11  regulations to re-detain him.

12        Therefore, this factor weighs in favor of granting Petitioner's motion for temporary

13  restraining order and preliminary injunction.

14        2.    Irreparable Harm

15        The Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to

16  immigration detention" including "subpar medical and psychiatric care in ICE detention

17  facilities" and "the economic burdens imposed on detainees and their families as a result of

18  detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Since Petitioner's release

19  from ICE custody in 2023, he has reconnected with family and obtained employment at a non-

20  profit in San Francisco. (Doc. Nos. 22 at ¶5; 23 at 30.) If Petitioner remains detained, he is at risk

21  of losing his employment and subsequently, his housing. (*Id.*)

22        Moreover, "[i]t is well established that the deprivation of constitutional rights

23  'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th

24  Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged

25  deprivation of a constitutional right is involved, most courts hold that no further showing of

26  irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)

27  (quoting *Wright, Miller, & Kane, Federal Practice and Procedure*, § 2948.1 (2d ed. 2004)). The

28  Ninth Circuit has also noted that "unlawful detention certainly constitutes 'extreme or very

serious' damage, and that damage is not compensable in damages." *Hernandez*, 872 F.3d at 999.

Therefore, this factor weighs in favor of granting Petitioner's motions for temporary restraining order and preliminary injunction.

### 3. Balance of the Equities and Public Interest

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). Petitioner has demonstrated that he is likely unlawfully detained in violation of his due process rights and is suffering the harms of immigration detention. On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal, especially considering Petitioner's compliance with the requirements of the Order of Supervision ("OSUP"), his weekly attendance at ICE meetings since his release from custody in 2023, and his economic and familial ties to San Francisco. (Doc. No. 22 at ¶ 5.) Despite Respondents' argument to the contrary, there is nothing in the current record to suggest that releasing Petitioner would impede Respondents' ability to remove him to Vietnam if the necessary travel document is obtained. Further, the Ninth Circuit has recognized that "[t]he costs to the public of immigration detention are 'staggering,'" and that "[s]upervised release programs cost much less by comparison. . . ." *Hernandez*, 872 F.3d at 996. Government expenditure in this case is not in the public interest in light of Petitioner's compliance with his OSUP, stable employment, and consistent attendance at scheduled ICE meetings. *See Vargas*, 2020 WL 5074312, at *4. Therefore, this factor weighs in favor of granting Petitioner's motion for temporary restraining order and preliminary injunction.

**C.    Status Quo**

In his motions, Petitioner asks the court to release him from detention "to preserve the

status quo before [Respondents] unlawful actions[.]" (Doc. No. 23 at 10.) The status quo *ante litem* is "the last uncontested status which preceded the pending controversy[.]" *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir, 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)); *see Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) ("the 'status quo' refers to the legally relevant relationship between the parties before the controversy arose") (citing *McCormack v. Hiedeman*, 694 F.3d 1004, 1020 (9th Cir. 2012)).

In their opposition, Respondents argue Petitioner is attempting to disturb "[t]he status quo [] this court-of-custody found in [its prior order], [] that changed circumstances warrant Petitioner's civil detention pending his reasonably foreseeable removal to Vietnam, his country of origin." (Doc. No. 26 at 6.) Respondents' characterization of this court's prior order is incorrect. The court did not address the status quo issue in its prior order. Instead, the court solely determined it lacked the authority to grant Petitioner's initial injunctive relief request. (Doc. No. 21 at 7.)

Here, Petitioner had been on supervised release for almost two years until he was re-detained by the government. (Doc. No. 22 at ¶ 5.) Because Petitioner challenges his re-detainment, the last uncontested status of Petitioner was before he was re-detained on June 4, 2025. *See Doe*, 2025 WL 691664, at *2 ("It is questionable whether that status quo is properly considered to be detention when the Government suddenly took an allegedly unconstitutional action in rearresting Petitioner without a hearing."); *Domingo-Ros v. Archambeault*, No. 25-cv-01208-DMS-DEB, 2025 WL 1425558, at * (S.D. Cal. May 18, 2025) (granting an injunction for petitioners that sought a "probationary injunction" to "preserve the status quo preceding this litigation—their physical presence in the United States free from detention"); *Abrego Garcia v. Noem*, No. 25-cv-00951-PX, 2025 WL 1014261, at *9 (D. Md. Apr. 6, 2025) (finding that the petitioner "request[ed] relief designed to re[s]tore the status quo ante . . . to return him to where he was on March 12, 2025, before he was apprehended by ICE and spirited away to [the Terrorism Confinement Center in El Salvador]"); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *3 (N.D. Cal. Jul. 4, 2025) (finding that the "moment prior to the

11

Petitioner's likely illegal detention" is the status quo). Accordingly, the court finds Petitioner's immediate release is required to return him to the status quo.

## CONCLUSION

For the reasons explained above:

1. Petitioner's motions for temporary restraining order and preliminary injunction (Doc. No. 23) are GRANTED;

2. Respondents are ORDERED to immediately release Petitioner from Respondents' custody;

3. Respondents are ENJOINED AND RESTRAINED from re-detaining or removing Petitioner to a third country without notice and an opportunity to be heard; and

4. This court will set an expedited briefing schedule on the petition for writ of habeas corpus by order following the issuance of this order.

IT IS SO ORDERED.

Dated:   **July 16, 2025**   _____
Dena Coggins
United States District Judge